STATE OF CONNECTICUT *v.* ROBERT HARDISON (6196)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued June 9—decision released September 13, 1988

*Judy Ann Stevens,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's

■■■■■■

attorney, and *John Smriga,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of the sale of cocaine in violation of General Statutes § 21a-277 (a). We find no error.

Although the defendant has presented six claims of error for our review, four of the six are not reviewable.[1] The two remaining claims are that the trial court erred (1) in instructing the jury that it could consider the special training and experience of police officers, and (2) in refusing to give the defendant's requested instructions regarding identification testimony.

The jury could reasonably have found the following facts. William Chase, an undercover officer with the Bridgeport police department, made two controlled

---

[1] The defendant's first two claims of error, that the court erred (1) in admitting into evidence transcripts of recorded conversations between the defendant and an undercover police officer, and (2) in precluding evidence explaining the circumstances of the defendant's prior arrest for possession of narcotics with intent to sell, are not reviewable due to the defendant's failure to comply with Practice Book § 4065 (d) (3) for briefing claimed errors in evidentiary rulings. See, e.g., *Terlizzi* v. *Linsley,* 9 Conn. App. 434, 438, 519 A.2d 1210 (1987); *Yale Literary Magazine* v. *Yale University,* 4 Conn. App. 592, 595, 496 A.2d 201 (1985), aff'd, 202 Conn. 672, 522 A.2d 818 (1987).

We will not review the defendant's fourth claim of error, regarding the court's instruction to the jury that an identification made after a lineup or through a photo array is generally more reliable than a one-on-one viewing, because this instruction was not objected to at trial; *State* v. *Golding,* 14 Conn. App. 272, 279, 541 A.2d 569 (1988); and the defendant does not claim review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). See *State* v. *Lizotte,* 200 Conn. 734, 742A, 517 A.2d 610 (1986).

Finally, the defendant's sixth claim of error, that the court deprived him of his right to a fair trial by its erroneous evidentiary rulings, by its jury instructions and by its denial of his motion for a new trial, is not a separate issue at all, but rather represents a rehashing of issues one through five. To the extent reviewable, the myriad issues raised in the sixth claim are subsumed by the first five issues raised.

purchases of cocaine from the defendant in December, 1985. On both occasions, Chase used marked money and was equipped with a body transmitter which made a tape recording of the transactions.[2] After the second controlled purchase, Chase viewed a photo array at police headquarters and identified a photograph of the defendant as the seller of the narcotics. The defendant was later arrested, charged with two counts of violating General Statutes § 21a-277 (a), and convicted of those charges by a jury.

The first of the defendant's reviewable claims faults the trial court's instructions to the jury regarding the credibility of witnesses. The relevant portion of the charge is as follows: "[T]estimony [of police officers] is subject to the same test as all other witnesses and their status as police officers entitles their testimony to no special or unusual weight. Of course it is permissible for you to consider the special training and experience which a police officer receives when you are judging his ability to observe and remember and record events and occurrences while he is engaged in his duties." The defendant claims that this instruction permitted the jury to give more weight to the testimony of police officers than to the defendant's witnesses and, therefore, denied him a fair trial.[3] We disagree.

By these statements, the trial court did not instruct the jury that a police officer is, per se, more credible than a lay person. In fact, the court's initial admoni-

[2] These tape recordings, as well as transcripts of the conversations prepared by Chase, were admitted into evidence over the defendant's objections. It is this evidence that the defendant sought to challenge in his first claim of error. See footnote 1, supra.

[3] Five of the state's six witnesses were police officers. Through these witnesses, evidence was presented to the jury bearing on the length of service of these individuals and their training and experience, particularly with regard to their activities as undercover officers specializing in narcotic operations.

tion to the jury instructed them to give *no* special weight to the testimony of a police officer when determining his credibility. The statement that followed this admonition was in no way contradictory. The court's instruction that, as to police officers, it was permissible for the jury to consider their special training and experience *with regard to their ability to observe, remember and record events,* is no more than an acknowledgement that every vocation inherently possesses its own unique qualities. Indeed, the United States Supreme Court, in discussing the challenge to an identification made by an undercover narcotics officer, remarked that "as a specially trained, assigned, and experienced officer, he could be expected to pay scrupulous attention to detail, for he knew that subsequently he would have to find and arrest his vendor. In addition, he knew that his claimed observations would be subject later to close scrutiny and examination at any trial." *Manson* v. *Brathwaite,* 432 U.S. 98, 115, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

"It is well established that individual jury instructions are not to be judged in artificial isolation, but must be viewed in the context of the overall charge. *Cupp* v. *Naughten,* 441 U.S. 141, 146–47, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Silano,* 204 Conn. 769, 773, 529 A.2d 1283 (1987); *State* v. *Dolphin,* 195 Conn. 444, 451, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985)." *State* v. *Palmer,* 206 Conn. 40, 46, 536 A.2d 936 (1988). Viewed in context, we cannot say that this one statement unfairly presented the case to the jury. The jury was not told that it *must* consider the officers' training and experience; rather, it was instructed that such considerations were permissible. The court did not impermissibly interfere with the jury's freedom to believe or disbelieve all, part, or none of the testimony elicited from any witness before it. We conclude that "under the circumstances

of this case, the court's charge was correct in law and fairly presented the case to the jury in such a way that injustice was not done to either party." *State* v. *Pollitt,* 205 Conn. 61, 85, 530 A.2d 155 (1987), citing *State* v. *Marra,* 195 Conn. 421, 443, 489 A.2d 350 (1985).

The defendant's remaining claim of error challenges the trial court's failure to give the defendant's proposed instructions regarding the identification of the defendant. As the defendant concedes, there is no constitutional right or other requirement that the court specifically instruct the jury on the fallibility of eyewitness identifications. *United States* v. *Roundtree,* 527 F.2d 16, 19 (8th Cir. 1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1133, 47 L. Ed. 2d 332 (1976). The defendant, however, contends that he was entitled to have the jury instructed on "the dangers inherent in eyewitness identification testimony," and argues that an instruction based on *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972), should have been given.[4]

"Although such an instruction may be given in an appropriate case; see *State* v. *Harden,* 175 Conn. 315, 322, 398 A.2d 1169 (1978); it is not reversible error for a trial court to refuse to give a *Telfaire* instruction where the conviction of the defendant did not turn upon the testimony of eyewitnesses who were uncertain, unclear or inconsistent. *State* v. *Davis,* 198 Conn. 680, 685, 504 A.2d 1372 (1986). Our review of the charge to the jury on this issue, when examined as a whole,

---

[4] Under *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972), a jury should be instructed to consider the following factors when evaluating eyewitness identifications: the adequacy of the witness' opportunity and capacity to observe the offender; the length of time available for the witness to observe the offender; the proximity of the witness to the offender; whether the witness had seen or known this person in the past; whether the identification was a product of the witness' own recollection; and the credibility of the witness. Id., 558–59; see *State* v. *Davis,* 198 Conn. 680, 685, 504 A.2d 1372 (1986).

indicates that it was clear, accurate, complete and comprehensive. See *State* v. *Harrell,* 199 Conn. 255, 268–71, 506 A.2d 1041 (1986); *State* v. *Frazier,* [7 Conn. App. 27, 37 n.3, 507 A.2d 509 (1986)]." *State* v. *Elliott,* 8 Conn. App. 566, 573, 513 A.2d 1285, cert. denied, 201 Conn. 813, 517 A.2d 630 (1986).

In this case, the trial court instructed the jury, inter alia: that the state bore the burden of proving identification beyond a reasonable doubt; that they must be satisfied beyond a reasonable doubt that the identification was accurate; that they should consider the witness' capacity and opportunity to observe the offender, including the duration of the observation, the proximity of the offender, the lighting conditions and previous familiarity with the offender; that they must be satisfied that the identification was made from the witness' own recollection; that they should consider the strength of the identification and the circumstances under which it was made; that they should consider the time span between the offense and the witness' next opportunity to observe the defendant; and that they must consider the credibility of the eyewitness.

The court did not err in its refusal to give the requested *Telfaire* instruction because the "salient principles of the court's charge adequately covered the dangers of misidentification." *State* v. *McKnight,* 191 Conn. 564, 583, 469 A.2d 397 (1983). The trial court was not required to charge the jury in the identical language requested by the defendant, as long as its instructions were adapted to the issues involved in the case and were sufficient for the guidance of the jury. See *State* v. *Harrell,* supra, 269; *State* v. *Frazier,* supra, 37 n.3.

There is no error.

In this opinion the other judges concurred.