STATE OF CONNECTICUT *v.* EDWARD L. ANDERSON
(6221)

BIELUCH, DALY and STOUGHTON, Js.

Argued June 17—decision released September 27, 1988

*Kent Drager,* assistant public defender, with whom, on the brief was *Joette Katz,* public defender, for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, was *Jeremy Weingast,* former assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crime of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). The defendant claims that the trial court erred (1) in allowing the defendant's prior conviction into evidence under its full title, (2) in failing to instruct the jury in accordance with the defendant's request to charge, (3) in stating that the defendant's use of a knife constituted deadly force, thus removing a factual issue from the jury's consideration, and (4) in improperly instructing the jury on the offense of assault in the first degree. We find no error.

The jury could reasonably have found the following facts. The defendant, Edward Anderson, and the victim, Pedro Ortiz, were involved in a traffic accident on Garden Street in Hartford. The fenders of their automobiles became locked and the defendant and Ortiz became embroiled in an argument. Ortiz picked up the defendant and threw him onto the hood of his car. The defendant then got back into his car while Ortiz stood by a nearby fence. A neighborhood crowd gathered around the scene of the accident. About five minutes later, the defendant left his car with a butcher knife concealed in his coat. He went around the crowd and tried to stab Ortiz. Shawn Grant, a friend of Ortiz, tried to stop the defendant and suffered cuts on his fingers. The defendant stabbed Ortiz twice in the side. Ortiz then ran down the street, but was stabbed in the back twice by the defendant. He was stabbed again when he stopped. The crowd then disarmed the defendant and beat him. The defendant subsequently escaped from the area before the police arrived.

I

The defendant elected to take the stand and raised, by way of a motion in limine, the admissibility of certain prior convictions for purposes of impeachment. The

defendant's first claim is that the trial court erred in not ruling that the defendant's prior conviction in Massachusetts for "conspiracy to commit armed robbery" could be referred to only as either "a felony involving larcenous intent" or as "conspiracy to commit robbery." The defendant contends that by allowing his prior conviction to be referred to by its complete title, he was unfairly prejudiced. We disagree.

It is well established that the state may impeach the testimony of a criminal defendant by offering into evidence the defendant's previous conviction of a crime carrying a term of imprisonment for more than one year. *State* v. *Crumpton,* 202 Conn. 224, 520 A.2d 226 (1987); *State* v. *DelVecchio,* 7 Conn. App. 217, 508 A.2d 460 (1986); see General Statutes § 52-145 (b). The admission of such evidence, however, is not automatic. The trial court must first weigh the probative value of the evidence against its prejudicial effect on the defendant. *State* v. *Crumpton,* supra, 228; *State* v. *DelVecchio,* supra, 219. This balancing process considers three factors: (1) the extent of the prejudice likely to arise; (2) the extent to which the particular crime relates to truthfulness and honesty; and (3) how much time has passed since the time of the prior conviction. *State* v. *Crumpton,* supra; *State* v. *Sergi,* 7 Conn. App. 445, 451, 509 A.2d 56 (1986). Evidence of prior convictions should be admitted unless the trial court finds its prejudicial effect "far outweighs its probative value." *State* v. *Crumpton,* supra; *State* v. *Geyer,* 194 Conn. 1, 6–7, 480 A.2d 489 (1984).

"Prior convictions which are admissible for purposes of impeachment have been divided into two categories: (1) those crimes which by their nature indicate a disposition toward dishonesty or a tendency to make false statements . . . which also include more recently, crimes involving larcenous intent; and (2) those crimes which do not reflect directly on the credibility

of one who has been convicted of them. *State* v. *Schroff,* 3 Conn. App. 684, 687, 492 A.2d 190 (1985)." *State* v. *DelVecchio,* supra, 220. Crimes that reflect a lack of veracity are highly probative of a witness' credibility, and are therefore more likely to be admissible. *State* v. *Geyer,* supra, 15–16 n.9. Conversely, crimes that do not directly reflect on credibility are less probative and thus entitled to less weight in the balancing process. Id., 13.

Our Supreme Court has declared, however, that the admission into evidence of prior convictions that do not directly reflect on credibility need not be barred even though specifically naming the crime might result in extraordinary prejudice. In *State* v. *Geyer,* supra, 16, the court suggested that prior convictions that do not directly reflect on credibility might be referred to as "an unspecified crime" or "crimes carrying a penalty of more than one year." In this way, the character of a defendant could be impeached without subjecting the defendant to the extraordinary prejudice that might follow if the prior crime was specifically named. Id.

Our Supreme Court made it abundantly clear in *State* v. *Crumpton,* supra, that the *Geyer* holding was a limited one. In *Crumpton,* the court dealt with the admission of the defendant's prior conviction for robbery in the second degree. The court refused to accept the defendant's argument that because a robbery charge has both an aspect of larceny, which bears on credibility, and an aspect of violence, which is not as probative of credibility, the prior conviction should have been entered into evidence as an unspecified felony. *State* v. *Crumpton,* supra, 232. The court expressly agreed with our previous determination that the crime of robbery is inextricably intertwined with the crime of larceny, and thus directly relevant to credibility. Id.,

229 n.6. The court therefore upheld the refusal of the trial court to sanitize the prior conviction of robbery in the second degree. Id., 233.

This court will upset a trial court's order denying such a motion to exclude a defendant's prior record, offered to attack his credibility, only if the trial court has abused its discretion. *State* v. *Binet,* 192 Conn. 618, 623, 473 A.2d 1200 (1984). " 'The test used in determining if the court abused its discretion is whether the court could reasonably conclude as it did, and every reasonable presumption will be made in favor of the correctness of its action.' *State* v. *Johnson,* 4 Conn. App. 672, 673, 496 A.2d 522 (1985)." *State* v. *Woodard,* 11 Conn. App. 499, 506, 528 A.2d 404, cert. denied, 205 Conn. 802, 531 A.2d 940 (1987). We find no abuse of discretion here. In this case, there is little, if any, similarity between the prior conviction, conspiracy to commit armed robbery and the crime for which the defendant stood accused, assault in the first degree. There is little danger, therefore, that the prior conviction would result in the type of extreme prejudice that is generated when the defendant's prior conviction is for the same crime as that for which the defendant stands accused. See *State* v. *Graham,* 200 Conn. 9, 12, 509 A.2d 493 (1986); *State* v. *Wright,* 198 Conn. 273, 278, 502 A.2d 911 (1986); *State* v. *Geyer,* supra, 6; *State* v. *Carter,* 189 Conn. 631, 644, 458 A.2d 379 (1983); *State* v. *Woodard,* supra, 506. Moreover, it does not reasonably follow from his conviction for conspiracy to commit armed robbery that the defendant ever used a weapon.[1]

[1] The defendant claims that the jury could not be expected to understand that conspiring to do something is different from actually doing it. We give the jury more credit than does the defendant. It is not hard, conceptually, to understand that the defendant did not have to commit an armed robbery to be convicted of conspiracy to commit one. Thus, there is little chance of the confusion of which the defendant complains.

Furthermore, it is well established that a prior conviction of "robbery with violence" is admissible because it is directly relevant to credibility. *State* v. *Crumpton,* supra, 229 n.6; *State* v. *DelVecchio,* supra, 220; *State* v. *Kuritz,* 3 Conn. App. 459, 461, 489 A.2d 1053 (1985). We cannot discern how a prior conviction of conspiracy to commit armed robbery is any more prejudicial than one for "robbery with violence." If at all, it would seem less so. This prior conviction, because it involved robbery, was directly probative of the defendant's credibility. See *State* v. *Crumpton,* supra; *State* v. *DelVecchio,* supra. The trial court specifically and carefully weighed the probative value of this conviction against its prejudicial effect.[2] The defendant has not demonstrated that the prejudicial effect of the prior conviction "far outweighed" its probative value. There is no merit to this claim.

## II

The defendant's second claim is that the trial court erred by failing to instruct the jury on self-defense in accordance with his request to charge. In particular, the defendant's claim is that the instructions given prevented the jury from considering that the defendant was justified in using force because he felt threatened by a hostile crowd. It is the defendant's contention that the instructions limited the jury to considering only the actions of the victim and the defendant in determining the justifiability of the defendant's actions.[3] We disagree.

---

[2] The trial court refused to admit five other prior convictions for impeachment purposes after finding that their prejudicial effect outweighed their probative value.

[3] The trial court's instructions provided in pertinent part: "The assault would be justifiable no matter whether appearances to the defendant had later proved to be true or false, provided they were such as to furnish reasonable grounds for his believing that Mr. Ortiz was using or about to use deadly physical force or was inflicting or about to inflict on him, great bodily harm. Now, the law goes on to say in a provision which is applicable to

" 'When a proper request is filed pursuant to Practice Book § 852 or exception is taken pursuant to § 854 the test is whether the charge properly covered the substance of the written request or properly and adequately covered the specific subject matter of the exception.' *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). ' "[T]he charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." *State* v. *Bell,* 153 Conn. 540, 544, 219 A.2d 218 (1966).' *State* v. *Williams,* 182 Conn. 262, 269, 438 A.2d 80 (1980). ' "The trial court is not under a duty in a criminal proceeding to charge in the identical language requested if its charge is accurate,

this case, notwithstanding what was just said, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using force with complete safety by retreating. And assault in self-defense in this case was not justified if the threatened harm to Mr. Anderson could otherwise have been avoided by his retreating from the scene. And you will remember that there is considerable evidence as to whether or not Mr. Anderson could have retreated from the scene. So Mr. Anderson would not have been justified in assaulting Mr. Ortiz if you find that Mr. Ortiz had abandoned the attack or—and particularly if he was in the act of fleeing from Mr. Anderson.

"You can conclude that a person who's being assaulted or who reasonably believes he's about to be assaulted may use such force in such degree as he reasonably believes is necessary. The moment he steps over the line, however, and uses more force than he reasonably believes is necessary, then he becomes a wrongdoer and becomes guilty of a crime.

"Now, on the issue, and both counsel have very well brought out the evidence which was produced here on the issue of justification or self-defense, if you prefer that term, there is testimony by—on the one hand by the victims and by other people that the state produced as to how the fight started, when and where the stabbings—different stabbings occurred, and the circumstances of the defendant and the victim Ortiz leaving the scene of the collision and proceeding up the street to the corner of Mather Street. There was testimony on the other hand from Alexis Smith as to what she saw and as to the kind of scene that was taking place between the defendant and the victims and the crowd was gathered around. That would bear upon the reasonableness of the defendant's assessments of the situation that he was in. There was again, testimony from the defendant and Alexis Smith, again as to the circumstances with their leaving the initial scene and moving up the street on Mather Street. That would bear on the reasonableness of the force that the defendant employed. The danger or apparent

adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the evidence, and when its instructions are suited to their guidance in the determination of those issues." *State* v. *Harden,* 175 Conn. 315, 322–23, 398 A.2d 1169 (1978).' *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986); see also *State* v. *Fuller,* 199 Conn. 273, 279, 506 A.2d 556 (1986); *State* v. *Timmons,* 7 Conn. App. 457, 463, 509 A.2d 64 (1986)." *State* v. *Delgado,* 13 Conn. App. 139, 144–45, 535 A.2d 371 (1987).

danger claimed by the defendant in this case is to be determined from his standpoint at the time of the incident and under all of the existing circumstances, the act leading to the defendant's claim of self-defense need not be an actual threat or assault. For example, you will remember that Mr. Anderson testified that he used a knife to stab Mr. Ortiz when Mr. Ortiz turned and the defendant believed Mr. Ortiz was going to kick or assault him. You don't have to find that there was an actual threat or an assault by Mr. Ortiz, and the test is not what the other person, Mr. Ortiz, actually intended, but what Mr. Ortiz's act caused the defendant reasonably to believe was Ortiz's intention. In other words, you have to look from the defendant's viewpoint. The danger need not have been actual if the defendant reasonably believed that it was actual or real or imminent or unavoidable. But in judging the danger to himself, the defendant is not required to act with infallible judgment, ordinarily on exercising the right of self-defense is required to act instantly of course, and without time to deliberate and investigate. Under such circumstances it is often possible to mistake an actual threat where none in fact existed, and the law does not require the same kind of coolness and judgment in estimating his danger at the time and at that scene, but of course now the jury can exercise.

"Now, in order to maintain this claim of justification or of self-defense, the defendant may only use reasonable force to defend himself. And that is defined in our law as, the amount of force that would be used by an average person of ordinary intelligence acting under the same circumstances. And in deciding whether the force used in this case was reasonable, you may examine such factors as the physical attributes of the parties involved, that is the defendant and Mr. Ortiz, including their age, their height and their weight, the—I remind you that the use of deadly force which in this case involved a knife, you may find that that knife was capable of causing serious physical injury or not. The use of deadly force, that knife, is reasonable only to resist the threat of death or serious physical harm."

The defendant complains that the trial court, in instructing the jury on the law of self-defense, made numerous references to the victim's actions, but only one reference to the crowd present at the time of the assault. The crux of the defendant's argument is that, in effect, the jury was not told it could take the presence of the crowd into consideration in determining the reasonableness of the defendant's actions. Our review of the trial court's instructions does not support the defendant's allegation. While it is true that the trial court used the word "crowd" only once,[4] through the use of other language, the court clearly invited the jury to consider in its determination of the reasonableness of the defendant's actions that a crowd was present.

The trial court told the jury that "the kind of scene that was taking place between the defendant and the victims and the crowd was gathered about . . . would bear upon the reasonableness of the defendant's assessment of the situation that he was in." Later, the court stated, "[t]he danger or apparent danger claimed by the defendant in this case is to be determined from his standpoint at the time of the incident and under all of the existing circumstances." These particular instructions, along with the other references the trial court made to the "scene" and "circumstances" at the time of the assault, fairly and adequately encompassed the defendant's request to charge concerning the law of self-defense. See *State* v. *Delgado,* supra, 146.

## III

The defendant's third claim of error is that the trial court instructed the jury that the defendant's use of the knife constituted deadly force and that, in doing so, it effectively directed a verdict that the defendant was using deadly force. This, the defendant maintains,

---

[4] We note, parenthetically, that the defendant's request to charge only contained two references to the word "crowd."

played a substantial role in the jury's rejection of his claim of self-defense. He did not except to the charge at trial, but maintains that this claim is nevertheless reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). We agree. *State* v. *Flynn,* 14 Conn. App. 10, 32, 539 A.2d 1005 (1988). "Although a trial court may, in its discretion, make reasonable comments on the evidence; *State* v. *Schoenbneelt,* 171 Conn. 119, 124, 368 A.2d 117 (1976); it may not direct or advise the jury how to decide the case. *State* v. *Storlazzi,* 191 Conn. 453, 465, 464 A.2d 829 (1983); *State* v. *Nims,* 8 Conn. App. 631, 640, 513 A.2d 1280, cert. denied, 201 Conn. 812, 516 A.2d 887 (1986). This rule is premised on a criminal defendant's constitutional right to have issues of fact decided by a jury and not by a court. *State* v. *Hines,* 187 Conn. 199, 210, 445 A.2d 314 (1982)." *State* v. *Flynn,* supra, 33; *State* v. *Fenn,* 16 Conn. App. 318, 329–30, 547 A.2d 576 (1988).

During its instructions to the jury with respect to self-defense, the trial court made the following remarks: "I remind you that the use of deadly force which in this case involved a knife, you may find that the knife was capable of causing serious physical injury or not. The use of deadly force, that knife, is reasonable only to resist the threat of death or serious physical harm." This, the defendant contends, operated to remove from the jury's consideration whether the force used by the defendant was deadly or "reasonably expected to cause death or serious physical injury." General Statutes § 53a-3 (5). We disagree.

A view of the challenged instruction in its entirety reveals that the trial court did not advise the jury how to resolve this issue in the case. The disputed statement was made in that part of the instruction where the court was explaining the various circumstances under which the defendant's use of deadly physical force would be justified. The trial court's reference to the knife was

merely to indicate to the jury that the knife was the only instrument the defendant was alleged to have used and the only evidence presented that would have justified the jury's finding that deadly physical force was used by the defendant. The court's instructions adequately presented the case to the jury. Viewing the charge as a whole, and considering it from the standpoint of its probable effect upon the jurors in guiding them to a proper verdict in the case; *State* v. *Foshay,* 12 Conn. App. 1, 27, 530 A.2d 611, cert. granted, 205 Conn. 813, 532 A.2d 587 (1987); we find that the court's statement was a permissible comment on the evidence rather than an instance of judicial factfinding. *State* v. *Fenn,* supra, 330–31.

## IV

The defendant's fourth claim of error is that the trial court erroneously presented the jury with an alternative form of the element of serious physical injury during its instructions on assault in the first degree for which there was insufficient evidence presented to the jury and which also allowed for a nonunanimous jury verdict. Although this instruction was not excepted to at trial, we will review this claim because it implicates the defendant's fundamental constitutional right to have each element of the offense charged proven beyond a reasonable doubt. *State* v. *Williams,* 202 Conn. 349, 363, 521 A.2d 150 (1987).

In its instructions to the jury on the elements of assault in the first degree, the court stated that the jury must find that the defendant intended to and did cause serious physical injury to the victim. It provided the jury with the complete statutory definition of serious physical injury; General Statutes § 53a-3 (4); as follows: "The term, serious physical injury means, physical injury which creates a substantial risk of death or which

causes serious physical disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ."

The defendant contends that there was no evidence presented that would support a finding that the victim suffered a serious physical injury because he was seriously disfigured. We disagree. Evidence was presented to the jury that the victim suffered permanent scars upon his chest and abdomen as a result of the defendant's attack. The information and bill of particulars did not specify what form of serious physical injury was caused by the defendant. On these facts, the jury could readily have concluded that the victim suffered serious disfigurement and was thus seriously injured. There is no merit to this claim.

The defendant also asserts that the trial court erred in not instructing the jury that it had to be unanimous with respect to the specific form of serious physical injury suffered by the victim. We disagree.

This was not an instance where the trial court presented the jury with distinct, alternative methods of committing a crime. A specific unanimity charge is required only if a court instructs the jury that " 'the commission of any one of several alternative actions would subject a defendant to criminal liability, and those actions are conceptually distinct from each other.' " *State* v. *Diorio,* 12 Conn. App. 74, 81, 529 A.2d 1320, cert. denied, 205 Conn. 813, 532 A.2d 587 (1987), 484 U.S. 1065, 108 S. Ct. 1025, 98 L. Ed. 2d 990 (1988).

The jury did not have to agree on which type of serious physical injury took place. What they had to determine unanimously was whether the victim suffered a serious physical injury. The issue of whether the victim suffered serious physical injury was a question of fact for the jury to resolve. *State* v. *Miller,* 202 Conn.

358

463, 489, 522 A.2d 249 (1987). This is so even if they differed among themselves whether the victim suffered that serious injury by being faced with substantial risk of death, by suffering serious physical injury, serious impairment of health or the loss or impairment of any bodily organ. See *State* v. *Diorio,* supra, 82; *State* v. *Jones,* 193 Conn. 70, 77, 475 A.2d 1087 (1984); see also *State* v. *Mancinone,* 15 Conn. App. 251, 272–79, 545 A.2d 1131 (1988). We decline to review this claim further.

There is no error.

In this opinion the other judges concurred.