### STATE OF CONNECTICUT v. LARRY JENKINS (10326)

DUPONT, C. J., LANDAU and HEIMAN, Js.

---

Argued June 12—decision released September 22, 1992

*Jon L. Schoenhorn,* for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Christopher Morano,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of the trial court, rendered after a jury trial, of guilty of the crime of attempted assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1)[1] and 53a-49 (a) (2).[2] He claims that the trial court improperly instructed the jury as to (1) the use of the defendant's prior felony conviction, (2) the definition of "dangerous instrument" as it related to the proof of

---

[1] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] The defendant was also convicted by the jury of the crime of assault in the second degree in violation of General Statutes § 53a-60 (a) (2), but at the time of sentencing, the trial court granted his motion to set aside the verdict as to that count.

an essential element of assault in the first degree, and (3) the issue of self-defense. The defendant concedes that none of these three claims was preserved at trial. He, therefore, seeks review for each claim under *State* v. *Golding,* 213 Conn. 232, 239–40, 567 A.2d 823 (1989). We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On March 15, 1990, the victim was riding his bicycle on the sidewalk adjacent to Blue Hills Avenue in Bloomfield when the defendant, driving a car, stopped the vehicle nearby. The victim left his bicycle on the sidewalk and approached the driver's side of the car. While the defendant was speaking with the victim, a passenger in the defendant's car got out and threatened to hit the victim with a bottle. The victim returned to his bicycle and pulled out a gun. The passenger returned to the car and the defendant drove south, toward Hartford. After firing his gun two or three times in the direction of the retreating car, the victim continued to ride his bicycle, on the sidewalk, toward Hartford. As he was riding, he saw the defendant make a U-turn and begin to drive directly toward him. The victim, believing that the car was going to drive onto the sidewalk, drew his gun and fired at the car again. The car passed him, made another U-turn and came toward him a second time. In his attempt to avoid being hit by the car, the victim rode his bicycle toward the far side of the nearest tree. As he was riding, he heard the motor of the car grow louder, looked back over his shoulder and saw the defendant's car mount the sidewalk. The car struck the victim, knocked him off the bicycle and then ran into the tree. The defendant then backed up the car, looked at the victim and drove off toward Hartford. The victim, screaming in pain, was taken to Mount Sinai Hospital in Hartford where he was treated for an injury to his right knee.

Initially, we will outline our standard of review as it relates to all three of the defendant's unpreserved appellate claims. In *State* v. *Golding,* supra, 239–40, our Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial if all of the following four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate the harmlessness of the alleged constitutional violation beyond a reasonable doubt." A defendant cannot prevail on an unpreserved claim unless all of the conditions are met, any one of which may be considered first. *State* v. *Shaw,* 24 Conn. App. 493, 497, 589 A.2d 880 (1991).

The defendant first claims that the trial court improperly instructed the jury on how it could use the evidence of his prior felony conviction. Specifically, the defendant argues that the trial court's instructions amounted to an impermissible direction to the jury on how it was to evaluate the defendant's testimony. He contends that this claim is reviewable because "it implicates a defendant's right to testify on his own behalf, and thus suggests a denial of a fair trial." We disagree.

In the portion of the charge to the jury relating to the credibility of witnesses the court stated as follows: "In this case, evidence was introduced to show that the defendant was—had been previously convicted of the crime of larceny in the second degree. Evidence of the commission of another crime other than the one charged is not admissible to prove the guilt of the defendant in this particular case. The commission of other crimes by this defendant has been admitted into evidence for the sole purpose of affecting his credibil-

ity. You must weigh the testimony and consider it along with all the other evidence in the case. You may take into consideration only the conviction of the defendant as bearing upon his credibility and you should determine that credibility upon the same consideration[s] as those given to any other witness."

The defendant's claim involves one word out of this entire charge. He claims that the word "must" in the phrase "you must weigh the testimony and consider it along with all the other evidence" deprived the jury of its role in determining the defendant's credibility. He asserts that the jury would have believed, from this one word, that it was obliged to find that the defendant was not a credible witness.

This claim is paradigmatic of the improper isolation of parts of an instruction. "It is well established that individual jury instructions are not to be judged in artificial isolation, but must be viewed in the context of the overall charge." (Internal quotation marks omitted.) *State* v. *Hardison,* 16 Conn. App. 142, 145, 546 A.2d 968 (1988), quoting *State* v. *Palmer,* 206 Conn. 40, 46, 536 A.2d 936 (1988). Viewing the charge in its entirety, as we must, we are convinced that the jury was not misled into believing that it was *required* to consider the prior conviction in assessing the defendant's credibility. See *State* v. *Piskorski,* 177 Conn. 677, 747, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Rose,* 169 Conn. 683, 687–88, 363 A.2d 1077 (1975).

The court properly instructed the jury that "[a]n accused person having taken the witness stand stands before you just like any other witness and is entitled to the same considerations and must have his testimony measured in the same way as any other witness . . . ." The court also instructed the jury that "[c]redibility of the witnesses and the weight to be given their testi-

mony is for you alone to determine. . . . You should, in short, size up the witnesses and make your own judgment as to their credibility and decide what portion—all, some or none—of any particular witness' testimony you will believe . . . . You are entitled to accept any testimony which you believe to be true and to reject, either wholly or in part, the testimony of any witness you believe has testified untruthfully or erroneously. The credit that you will give to the testimony offered is, as I have told you, something which you alone must determine." These comments properly apprised the jury of its role in assessing the credibility of the witnesses. *State* v. *Ryerson,* 201 Conn. 333, 348, 514 A.2d 337 (1986).

This claim, therefore, is not "of constitutional magnitude alleging the violation of a fundamental right." *State* v. *Golding,* supra, 240. The defendant cannot demonstrate a violation of his constitutional rights by culling this single word from the entire charge. *State* v. *Turcio,* 178 Conn. 116, 122–23, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); *State* v. *Tropiano,* 158 Conn. 412, 433, 262 A.2d 147 (1969), cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970). The second prong of *Golding* has not been met and, therefore, this claim must fail.

In his second claim, the defendant asserts that the trial court improperly instructed the jury on attempted assault in the first degree, regarding whether the automobile driven by the defendant was a dangerous instrument as defined by General Statutes § 53a-3 (7).[3] The defendant argues that the trial court, by instructing

---

[3] General Statutes § 53a-3 (7) defines a dangerous instrument as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury, and includes a 'vehicle' as that term is defined in this section."

the jury that a motor vehicle *is* a dangerous instrument, categorically removed this element from the jury's consideration, thereby usurping the factfinding role of the jury. The defendant contends that the true issue was the circumstances under which the vehicle was being used; *State* v. *Frazier,* 7 Conn. App. 27, 39, 507 A.2d 509 (1986); and suggests that the court should have instructed the jury that "it must decide whether the motor vehicle was an instrument which possessed the potential for causing either death or serious physical injury under the specific circumstances in which it was used by the defendant." He argues that this claim is reviewable because "it implicates his constitutional right to due process, which includes the requirement that the state prove all elements of the offense beyond a reasonable doubt." Again, we disagree.

The trial court instructed as follows: "Now, a dangerous instrument—I'm not going to read the entire paragraph to you because it suffices to tell you that a dangerous instrument can be a motor vehicle and the evidence in this case is that [the defendant] used a motor vehicle to do that because the focus of [the] concept of a dangerous instrument is the deadly capability of the instrument under the conditions of the particular case."

At the end of its instructions on attempted assault in the first degree, the court added: "If you find in this case that the State has proved that the defendant attempted to commit this crime—that is, the State has proved beyond a reasonable doubt that the defendant attempted to cause serious physical injury to another person by means of a dangerous instrument, then your verdict will be guilty of attempted assault in the first degree. If you find that the State has not proved all

these elements beyond a reasonable doubt, you must find the defendant not guilty of the crime as charged."[4]

The instruction on the definition of a dangerous instrument given in the court's charge on attempted assault in the first degree did not deprive the defendant of any constitutional right to a fair trial. The instruction, as it related to this charge, expressly stated that "a dangerous instrument *can* be a motor vehicle." (Emphasis added.) The challenged comments merely point out that the jury was to consider only the automobile in assessing whether the instrument used by the defendant, under the specific circumstances in which he used it, possessed the potential for causing either death or serious physical injury. The court's comment on the fact that the defendant used a motor vehicle in this case was an acceptable comment on the facts. See *State* v. *Anderson,* 16 Conn. App. 346, 355–56, 547 A.2d 1368, cert. denied, 209 Conn. 828, 552 A.2d 433 (1988). Additionally, the trial court instructed properly that "the focus of [the] concept of dangerous instrument is the deadly capability of the instrument under the conditions of the particular case." Examining the charge as a whole, and considering it from the standpoint of its probable effect on the jurors in guiding them to a proper verdict in this case; *State* v. *Foshay,* 12 Conn. App. 1, 27, 530 A.2d 611 (1987); we find that the statement was a permissible comment on the evidence and did not relieve the jury of its obligation to determine whether the automobile, as used by the defendant, was a dangerous instrument.

---

[4] In its instructions on assault in the second degree the court stated, "I told you already that a motor vehicle is a dangerous instrument. So, I will not give you any further definition of that because I've already told you what that means . . . ." At sentencing, however; see footnote 2, supra; the trial court granted the defendant's motion for judgment of acquittal as to the conviction of assault in the second degree.

The defendant has failed to satisfy the third prong of *State* v. *Golding,* supra. The alleged constitutional violation does not clearly exist and the defendant was not deprived of a fair trial. He, therefore, is not entitled to relief under *State* v. *Golding,* supra.

The defendant's final claim presents a two-part challenge to the trial court's instructions on self-defense. The defendant contends that the trial court, in its instructions on self-defense, (1) did not inform the jury that the state bore the burden of disproving justification beyond a reasonable doubt, and (2) impermissibly replaced the subjective-objective standard contemplated by General Statutes § 53a-19 (a)[5] with a simple objective standard. The defendant contends that this claim is reviewable "inasmuch as due process is implicated . . . [a] fundamental element of [which] is the right of a defendant charged with a crime to establish a defense." Our review of the record reveals that the defendant's right to present a defense was not implicated by the trial court's instructions and, therefore, the alleged constitutional violation does not clearly exist and the defendant was not clearly deprived of a fair trial. *State* v. *Golding,* supra, 239–40.

A defendant charged with a crime has a constitutional right to present a defense incident to his right to due process of law. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982); *State* v. *Miller,* 186 Conn. 654, 660, 443 A.2d 906 (1982).

---

[5] General Statutes § 53a-19 provides in relevant part: "(a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

" 'This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. See General Statutes § 53a-12 (a).' " *State* v. *Corchado,* supra, 660, quoting *State* v. *Miller,* supra, 660–61. It is well established that the defense of self-defense, when asserted, requires the state to disprove such a defense beyond a reasonable doubt. General Statutes § 53a-12 (a); *State* v. *Miller,* supra, 663; *State* v. *Gilchrist,* 24 Conn. App. 624, 632, 591 A.2d 131, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991); *State* v. *Holloway,* 11 Conn. App. 665, 670, 528 A.2d 1176 (1987).

Here, the trial court gave a lengthy instruction on self-defense. The court began this portion of the instruction by explaining that: "A person is justified in the use of reasonable force when he reasonably believes that such force is necessary to protect himself or another person from the use or impending use of physical force by another." The court also twice instructed the jury that it "must" find the defendant not guilty on the ground of justification, "unless the state had proven beyond a reasonable doubt any one of the following elements: The defendant did not believe that he was in imminent danger of death or injury and that the use of force was not necessary to protect himself. Two, he did not have reasonable grounds for such belief. Three, the force used was unreasonable." And again, at the conclusion of its instructions on self-defense, the court reminded the jury that the burden is on the state to prove that the defendant did not act in self-defense.

These instructions correctly explained that the state bore the burden of proving beyond a reasonable doubt the lack of justification. Although the court stated the burden in the reverse of the usual instruction, that the state has to disprove the elements of self-defense

beyond a reasonable doubt, the meaning of the instruction is identical and provides the jury with the appropriate guidance. In proving the negative of the self-defense elements, as required by the trial court's instructions, the state necessarily disproves the defendant's claim of self-defense in its more common, positively stated form. The fact that the court broke down the definition of self-defense into three elements merely aided the jury in its deliberations.

The trial court accurately and adequately informed the jury that the state bore the burden of proving beyond a reasonable doubt every element of attempted assault in the first degree. The trial court made it clear that the state must disprove the existence of self-defense. The charge, when taken as a whole, did not shift the burden of proof. It is, thus, not reasonably possible that the jury was misled by the court's instruction on self-defense. *State* v. *Quintana*, 209 Conn. 34, 50, 547 A.2d 534 (1988); *State* v. *Silveira*, 198 Conn. 454, 468, 503 A.2d 599 (1986); *State* v. *Sinclair*, 197 Conn. 574, 581, 500 A.2d 539 (1985); *State* v. *Smith*, 194 Conn. 213, 219, 479 A.2d 814 (1984); *State* v. *Gilchrist*, supra, 634–35. The defendant has not satisfied the third prong of *State* v. *Golding*, supra, with respect to the instruction on the burden of proof. He has failed to demonstrate that a constitutional violation clearly exists and that he was clearly deprived of a fair trial.

The second portion of this claim is that the trial court impermissibly replaced the subjective-objective standard contemplated by General Statutes § 53a-19 with a simple objective standard. The defendant relies on *State* v. *Williams*, 25 Conn. App. 456, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991), to support this claim. We are not persuaded.

The standard of review to be applied to this claim is whether it is reasonably possible that the jury was

misled. *State* v. *Corchado,* supra. "The charge is to be read as a whole and individual instructions are not to be read in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *DeJesus,* 194 Conn. 376, 388, 481 A.2d 1277 (1984).

The "test for the degree of force in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable." Id., 389 n.13; *State* v. *Hall,* 213 Conn. 579, 586 n.7, 569 A.2d 534 (1990); *State* v. *Silveira,* supra, 475–76. This statutory emphasis upon the defendant further demonstrates the function of the jury in their evaluation of the self-defense claim. *State* v. *Quintana,* supra, 46; *State* v. *Corchado,* supra, 663.

"The starting point of the jury's inquiry into whether 'reasonable force' was used by a defendant is whether the defendant *believed* that [such] force was necessary to repel the attack. *State* v. *DeJesus,* supra [389 n.13]. Next, the jury's inquiry should focus on the question of whether that *belief* was reasonable. Id." (Emphasis in original.) *State* v. *Williams,* supra, 464.

Relying on *State* v. *Williams,* supra, the defendant argues that the trial court's definition of reasonable force as "that force which an average person of ordinary intelligence in like circumstances would judge to be necessary to prevent injury and not more" was incorrect. Although in *Williams* we stated that this was an incorrect statement of the law, we concluded that, in the context of the entire jury instruction, and particularly in conjunction with an instruction that the jury

was to view the defendant's belief concerning danger from his standpoint, the improper instruction was harmless beyond a reasonable doubt.

Although this portion of the instruction was found to be improper in *Williams*, the charge as a whole, like the charge in *Williams*, properly instructed the jury that the danger claimed by the defendant had to be determined from his standpoint at the time of the attack and under all the existing circumstances. The jury was also instructed that the test is not what the other person actually intended but what the aggressor's act caused the defendant to believe was his intention.

We conclude that the trial court's instructions, as a whole, properly included both the subjective and objective portions of the self-defense test. It properly directed the jury to consider the defendant's personal belief about the danger he was facing and the necessity for the use of force. This portion of the claim, therefore, also fails.

The judgment is affirmed.

In this opinion the other judges concurred.